\

**Electronically Filed
Intermediate Court of Appeals
CAAP-13-0004539
17-OCT-2014
11:05 AM**

NO. CAAP-13-0004539

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

SETH-JOSIAH CRAVALHO, JR., Petitioner-Appellee, v.
JODY RIBAO, Respondent-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(FC-P NO. 06-1-0149)

SUMMARY DISPOSITION ORDER
(By:  Foley, Presiding Judge, Leonard and Reifurth, JJ.)

Respondent-Appellant Jody Ribao (**Ribao**) appeals from an August 23, 2013 Family Court of the Second Circuit (**Family Court**) post-decree Judgment and Order on Petitioner's Motion for Sole Legal and Sole Physical Custody and Other Relief (**Post-Decree Judgment**).[1]  The Family Court granted in part a motion filed by Petitioner-Appellee Seth-Josiah Cravalho, Jr. (**Cravalho**), which sought custody of the parties' child (**Child**).  Ribao also challenges the Family Court's September 26, 2013 order denying Ribao's motion for reconsideration of the Post-Decree Judgment.

Ribao raises the following points of error on appeal:

(1)  The Family Court erred when it entered the Findings of Fact (**FOFs**) 84 and 86-90 regarding Dr. Baum's testimony;

---

[1]  The Honorable Keith E. Tanaka presided.

(2)   The Family Court erred as a matter of law by omitting Hawai'i Revised Statutes (**HRS**) § 571-46(b)(6) from Conclusions of Law (**COL**) 7 and by failing to apply this provision to the facts;

(3)   The Family Court erred as a matter of law when it found a material change in circumstances allowing it to consider the grant of sole physical custody to Cravalho; specifically, the Family Court erred when it entered COLs 3, 4, and 5; and

(4)   The Family Court abused its discretion in denying Ribao's August 30, 2013 motion to reconsider the Post-Decree Judgment.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Ribao's points of error as follows:

(1)   During the evidentiary hearing on Cravalho's post-decree motion, Dr. Baum testified as to his opinion regarding Cravalho's consistency in administering Child's preventative asthma medicine:

> I think the biggest problem with asthma is, because it is a chronic relapsing condition, some people administer the medicine as we recommend on a daily basis as a preventive care or treatment. And other people's attitude more that, when it flares up, they pay attention to it, and when they seem to be well, they don't always give the medication; and I have some areas of concern that Seth doesn't always give the preventive medicine, that he'll treat her when he sees symptoms, but not always when she seems to be well.

He also stated:  "I feel that [Ribao] follows my directions about medication administration as I would like it to be done; and [Cravalho] seems to have a little bit more casual feel for the asthma."  He later elaborated on his concerns:

> Q:   And did [Cravalho] tell you that he was not going to give her Flovent?
> A:   He did not tell me, no.
> Q:   And do you know -- do you have any independent knowledge of whether or not [Cravalho] administers Flovent to [Child]?
> A:   I don't know for certain.
> Q:   You don't have anything in your chart that [Cravalho] is not administering Flovent to [Child]; correct?
> A:   The only things that I can tell you from my charting is there are times that she has come in

2

> and she hasn't been taking the prescribed
> medication or hasn't completed medication as we
> had like antibiotics for her.
>
>     . . . .
>
> Q:    And you've never had any cause to have any
>       concern that . . . [Cravalho] would ignore an
>       emergency or medical issue with regard to
>       [Child]; correct?
> A:    No, I haven't.  Correct.

FOF 84 states:   "Dr. Baum's impression was that Mother should have custody based upon the minor child's asthma 'flare ups.'"  This finding was supported by substantial evidence.  Dr. Baum testified that, based on the fact that Ribao was more consistent in administering Child's asthma medicine, he would recommend that she would be the better custodial parent for the purposes of asthma treatment.

FOF 86 states:   "Dr. Baum admitted that he has no concerns that Father would not appropriately deal with any medical issues regarding the minor child."  While Dr. Baum stated that Cravalho seemed to be less consistent about administering Child's asthma medicine, he also testified that he never had any cause to have any concern that Cravalho would ignore an emergency or medical issue with regard to Child.  Thus, this finding was supported by substantial evidence.

FOF 87 states:   "Dr. Baum also admitted he had no information regarding the parties and the minor child other than what was reflected in his medical charts."  We cannot conclude that this finding is clearly erroneous, as it fairly reflects Dr. Baum's testimony.

FOF 88 reads:   "Neither party raised the issue of the minor child's medical care with [the Guardian Ad Litem (**GAL**)]."  Ribao argues that this finding is incorrect because she raised the issue of medical care when she included Dr. Baum in her list of contacts for the GAL.  However, there is no indication in the GAL's report or testimony that Ribao raised the issue with the GAL beyond providing Dr. Baum's contact information.

FOF 89 reads:   "This court has no credible evidence that Father has not taken all appropriate steps to insure the minor child's medical needs were addressed in the past."

3

Although Dr. Baum testified that Cravalho seemed to be less consistent about administering Child's preventative asthma medicine, he did not elaborate as to Child's particular needs or point to any incident where he felt that Child's medical needs were unmet, such as Child experiencing a preventable asthma attack, a worsened condition, or a serious attack, his level of concern could reasonably be characterized as low. Dr. Baum concluded that he never had any cause to have any concern that Cravalho would ignore an emergency or medical issue with regard to Child. Thus, this finding is not clearly erroneous.

FOF 90 reads: "This court has no credible evidence that Father will not continue to take all appropriate steps to insure the minor child's medical needs are promptly addressed in the future." As noted above, Dr. Baum ultimately concluded that he never had any cause to have any concern that Cravalho would ignore a medical issue with regard to Child. The Family Court could reasonably infer from this testimony and the totality of Dr. Baum's testimony that Dr. Baum felt that Cravalho would be conscientious in addressing Child's medical needs. Thus, this finding is supported by substantial evidence and is not clearly erroneous.

We conclude that the Family Court's FOFs are grounded in substantial evidence, and therefore are not clearly erroneous.

(2) HRS § 571-46(b) (Supp. 2014), enumerates factors that must be considered in determining what constitutes the best interests of the child, including "[t]he physical health needs of the child[.]" HRS § 571-46(b)(6) (Supp. 2014). Here, the Family Court clearly considered this factor, as provided in its FOFs. The Family Court's FOFs reflect its determination that Child's health needs were being met and provided no basis for granting or denying the request to change custody. The Family Court did not err as a matter of law by failing to specifically identify HRS § 571-46(b)(6) in COL 7.

(3) As this court recently held:

> Generally, the family court possesses wide discretion in making its decisions and those decisions will not be set aside unless there is a manifest abuse of discretion. Thus,

> we will not disturb the family court's decisions on appeal unless the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant and its decision clearly exceeded the bounds of reason.
>
> . . . .
>
> While the statutory language [in HRS § 571-46] grants family courts the jurisdiction to modify a joint custody order, our case law requires that the party seeking modification must first make a threshold showing of material change in circumstances. . . . Whether a substantial and material change has been presented is reviewed under the right/wrong standard.

Hollaway v. Hollaway, 133 Hawai'i 415, 421, 329 P.3d 320, 326 (App. 2014) (citations omitted; format altered).

Here, the Family Court found that Ribao's "repeated violations of the May 30, 2012 Stipulated [Custody] Order constitutes a material change in circumstances since the entry of said order[.]" These repeated violations included denying Cravalho visitation on approximately 61 out of 132 days, making last-minute flight arrangements for Child to visit Cravalho, and denying Cravalho telephone access to Child. Ribao argues that violations of a prior court order alone do not constitute a material change in circumstances. Cravalho testified that he had only agreed to allow Child to relocate to Oahu with Ribao on the condition that Child spend the weekends with him on Maui.

The Family Court also found that Child's "repeated absences and tardies at school while in Mother's care constitutes a material change in circumstances[.]" Child was absent from school twenty-one times[2] and tardy to school thirty-five times during the school year while under Ribao's care. There was evidence that Child's attendance had since improved. However, the GAL testified that she believed some of Child's absences and tardies were a result of Ribao's work schedule and practice of allowing Child to stay up very late at night, implying that Child would likely continue to be absent or tardy while living with Ribao. Additionally, Cravalho testified that he and Ribao

---

[2] These absences included four consecutive days when Ribao took Child with her to Las Vegas to help clean out Ribao's boyfriend's grandmother's house.

attempted without success to address the problem by changing Cravalho's visitation to every other weekend in January 2013.

The Family Court found that "the increase in acrimony by Mother against Father, evidenced by the tone and amount of angry text messages from Mother to Father, including her telling the child that Mother does not like Father and his wife, constitutes a material change in circumstances[.]"

It also appears from the record that shortly after Child relocated to Oahu, Ribao's cooperation with Cravalho declined. The GAL testified about the relationship between the parties:

> There's still an inability for the parties to communicate. I did not find it so much with the dad. I could see in the text messages that I submitted with my report, and they're only some of the copies, there's -- to me, it was clear to see that dad was just trying to stick with the Court order and trying to reason with [Ribao]. Mom still has a lot of anger around not being in a relationship with dad and it shows. It very clearly shows in the text messages.

The GAL also testified that Ribao's expression of dislike for Cravalho and his wife likely had a negative effect on Child, because "kids have a really hard time when they're pitted against each other and when one parent expresses a dislike or a hatred of the other parent or anybody involved with that parent."

There was ample evidence in the record that Ribao was hostile and uncooperative with Cravalho, and that her unwillingness to work with him to follow the May 30, 2012 Stipulated Custody Order resulted in Cravalho seeing Child less often than agreed upon and ordered therein.

We conclude that, taken as a whole, these circumstances, which are reflected in the Family Court's FOFs and COLs and supported by the record, constituted a material change in the circumstances that existed at the time of the entry of the May 30, 2012 Stipulated Custody Order and therefore warranted the Family Court's modification of Child's custody and visitation.

(4) We review the Family Court's ruling on a motion for reconsideration under the abuse of discretion standard. Schiller v. Schiller, 120 Hawai'i 283, 288, 205 P.3d 548, 553

(App. 2009). "An abuse of discretion occurs if the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." Id. Ribao's bare assertion that the Family Court abused its discretion when it denied her motion for reconsideration of the August 23, 2013 Post-Decree Judgment has no merit.

For these reasons, the Family Court's August 23, 2013 Post-Decree Judgment is affirmed.

DATED: Honolulu, Hawai'i, October 17, 2014.

On the briefs:

Stephen T. Hioki
for Respondent-Appellant

Elizabeth C. Melehan
for Petitioner-Appellee

Presiding Judge

Associate Judge

Associate Judge